UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-23-GWU


CLEO CRESS,                                                    PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Cleo Cress, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, a depressive disorder, and anxiety.  (Tr. 12).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Cress retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 52-year-old man with a high school equivalency diploma and work experience as a clerk and security guard, could perform any jobs if he were limited to lifting 20 pounds occasionally and 10 pounds frequently, and also had the following non-exertional restrictions.  He: (1) could occasionally climb, stoop, bend, crouch, and

crawl; (2) could have no exposure to unprotected heights or hazardous equipment and machinery; (3) could have no more than occasional and casual interaction or contact with coworkers, supervisors, or the public; and (4) could perform no highly stressful production rate or quota jobs.  (Tr. 36).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 36-7).

On appeal, this court must determine if the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.  There is an additional issue in that the plaintiff had filed a prior application for benefits which was denied in a hearing decision dated December 17, 2007 (Tr. 42-50), and which is currently on appeal to the Sixth Circuit.  <u>Cress v. Social Security Administration</u>, No. 10-5951 (6th Cir.) (filed Aug. 10, 2010).  The ALJ in the present case considered only the issue of disability beginning December 18, 2007, the first day of the unadjudicated period.

Mr. Cress alleged disability due to back pain, a leaky heart valve, depression, hearing, vision, and sinus problems, knee problems, and left ankle pain.  (Tr. 131).  The only issues he presents on appeal are related to his mental issues, however.

Mr. Cress testified that he was on medications for depression, but the problem seemed to be getting worse and he sometimes had thoughts of suicide, although no plan.  (Tr. 33).  He was receiving medication from his family doctor.  He

had attended the Comprehensive Care Center (CCC) for outpatient treatment until the price of a visit was increased beyond his means.  (Tr. 29).

Office notes from the CCC show that the plaintiff was initially seen by Psychiatrist Syed Raza in September, 2006, prior to the time at issue here, and diagnosed with dysthymia and a mood disorder due to a general medical condition. (Tr. 346-7).  His Global Assessment of Functioning (GAF) score was given as 60. (Tr. 347).  A GAF score in this range reflects moderate symptoms or moderate impairment in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.  Dr. Raza prescribed medication and advised regular counseling.  Subsequent visits in 2007 show that the plaintiff was compliant, tolerating his medications, and had minimal anxiety and depression, although he was worried about his wife's health.  (E.g., Tr. 353).  He was also bothered by physical pain.  (Tr. 354).  A psychosocial assessment completed in September, 2007, slightly before the period at issue here, contained a functional assessment ranking Mr. Cress's abilities as only "slightly low" in the areas of "daily living/personal care functioning," physical functioning, and cognitive/intellectual functioning.  (Tr. 389).

Psychologist Jeanne M. Bennett conducted a consultative examination of Mr. Cress on November 15, 2008.  He described physical problems along with depression and anxiety.  (Tr. 301).  Although the plaintiff described relatively few daily activities, he performed some housework such as washing clothes and taking

out trash, as well as managing household finances.  (Tr. 303).  He saw family and friends about twice a week, but spent most of his day watching television.  (Id.).  Dr. Bennett found the plaintiff's attention and concentration to be intact, and he was able to answer most questions testing his memory.  (Tr. 304).  She felt his global intellectual functioning was in the average range, and he was said to have adequate judgment, a satisfactory capacity for insight, and appeared to be capable of making decisions for himself independently.  (Tr. 305).  He reported that he was "stressed" by feeling depressed and not having much to do.  Dr. Bennett diagnosed a pain disorder with psychological features secondary to a back problem and a depressive disorder.  (Id.).  She assigned a GAF score of 50.  (Tr. 306).  A GAF score in this range is at the upper limit of the range of serious symptoms or serious impairment in social, occupational, and school functioning.  DSM-IV-TR, p. 34.  In terms of specific functional restrictions, she felt that Mr. Cress would only be moderately limited in the area of tolerating the stress and pressure of day-to-day employment, and would have a slight limitation in his ability to maintain attention and concentration toward the performance of simple, repetitive tasks.  (Tr. 306).

State agency psychologists Jan Jacobson and Jane Brake reviewed the evidence on December 4, 2008 and April 3, 2009 and prepared mental residual functional capacity assessments indicating that the plaintiff was moderately limited in the areas of understanding, remembering, and carrying out detailed instructions and interacting appropriately with the general public.  (Tr. 314-15, 406-8).

The plaintiff alleges on appeal that the ALJ improperly "rejected" Dr. Bennett's opinion and in particular gave insufficient reasons to reject her specific limitations.  As previously noted, however, Dr. Bennett had specifically found a moderate limitation in the plaintiff's ability to tolerate the stress and pressure of day-to-day employment, and the ALJ had specified in the hypothetical question that Mr. Cress was unable to perform highly stressful work.  (Tr. 36).  Therefore, the psychologist's conclusion was not rejected.  The plaintiff asserts that the GAF score of 50 should have been included in the hypothetical question, but as the ALJ commented, this score appeared to be inconsistent with the other evidence, including the plaintiff's CCC treatment history and Dr. Bennett's conclusion that there were no serious work-related mental limitations.  (Tr. 17).  While the ALJ's explanation could have been somewhat clearer, the court does not find any error given that the overwhelming weight of the evidence shows Mr. Cress does not have any serious limitations in his occupational, social, or school functioning, as would be implied by a score of 50 on the GAF scale.  The ALJ's decision to give Dr. Bennett's specific functional finding greater weight is amply supported by the evidence in her report and elsewhere.

The plaintiff's second assignment of error is that the hypothetical question did not accurately advise the VE of the restrictions assessed by the state agency reviewing psychologists.  The plaintiff appears to argue that the VE should have been advised of "moderate" limitations in social functioning and concentration,

persistence, or pace which were indicated by the psychologists as part of their rating of the "B" criteria of the Commissioner's Listings of Impairment.  (Tr. 328, 402). However, Social Security Ruling (SSR) 96-8p instructs the adjudicator to remember that the "B" criteria used to rate the severity of mental impairment at Steps Two and Three of the sequential evaluation process are not a residual functional capacity assessment.  At Steps Four and Five, a more detailed assessment is required.  The ALJ noted that he agreed with the state agency sources that the claimant was not disabled.  (Tr. 17).  He did not give a specific rationale for not providing their limitations of a moderately limited ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public, as set out in the regulations at 20 C.F.R. § 404.1527(f)(2)(ii).  In the context of the present case, however, any error was harmless.  The hypothetical question already restricted the plaintiff's contact with the public.  (Tr. 36).  While it did not specifically limit the claimant's ability to understand, remember, and carry out detailed instructions, the ALJ had answered a prior hypothetical question which did include a restriction to simple instructions, and identified the same job of cleaner as being available.  (Tr. 35).[1]  The only other job identified by the VE in response to the

---

[1]In a Response to the Commissioner's Motion for Summary Judgment, D.E. #14, the plaintiff cites Ealy v. Commissioner of Social Security, 594 F.3d 504 (6th Cir. 2010) which concerned, in part, the weight properly given to Section I and Section III of state agency mental functional capacity assessments.  The Commissioner argued that Section III was entitled to controlling weight, but the Sixth Circuit did not reach the issue because it found that even if the Commissioner were correct, not all of the restrictions in Section

current hypothetical question was dishwasher, a position not normally associated

with detailed job instructions.  (Tr. 37).  Accordingly, no useful purpose would be

served by remanding the case merely in order to have the ALJ explain his reasons

for not specifying such a restriction.

     The decision will be affirmed.

     This the 10th day of November, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

---

III had been given to the VE.  Id. at 516.  In the present case, the plaintiff argues that not
all of the restrictions given in either Section I or Section III were provided to the VE, but
for the reasons set out above, the undersigned believes that all of the Section I
restrictions were adequately incorporated in the hypothetical question.